AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
2013 JUL 12 PM 3:40
CLERK, U.S. DISTRICT C...
SOUTHERN DISTRICT OF CALI...

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
One Apple iphone 5 Cellular Telephone )
Model Number: A1429 ; )
IMEI Number: 9900002732766215 )

Case No. 13MJ2666

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ____Southern____ District of ____California____ *(identify the person or describe property to be searched and give its location)*: See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __21__ U.S.C. § __952;960__, and the application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Abbi Henry, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/12/13

*Judge's signature*

City and state: San Diego, California

Honorable Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | Case Number: |
| ) | |
| (1)   One Apple iPhone 5 Cellular Telephone ) | AFFIDAVIT OF SPECIAL |
|       Model number: A1429 ) | AGENT ABBI HENRY |
|       IMEI Number: 9900002732766215 ) | IN SUPPORT OF SEARCH |
| ) | WARRANT |

## AFFIDAVIT

I, Abbi Henry, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Department of Homeland Security, Homeland Security Investigations agents for the following target property: one cellular telephone seized from defendant Martha Salas on and about April 29, 2013. The cellular telephone is one Apple iPhone 5, Model number: A1429, IMEI Number: 9900002732766215: ("Target Telephone #1").

2. Target Telephone #1 was seized from Martha Salas on or about April 29, 2013 at and about the time of her arrest. It is believed that Target Telephone #1 was used by Martha Salas to communicate with co-conspirators during a drug smuggling event on April 29, 2013. Salas has been charged with the importation of 7.82 kilograms of cocaine and 2.44 kilograms of methamphetamine in the Southern District of California, 13-CR-1936-GPC. Probable cause exists to believe that Target Telephone #1 contains evidence relating to violations of Title 21, United States Code Sections 952, 960 and 963. The specified telephone is currently in the possession of Department of Homeland Security, Homeland Security Investigations, 2255 Niels Bohr Court, San Diego, CA, 92154 (Seized Property Vault).

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the following items will be found in the cellular telephone to be searched:

    a.    Telephone numbers and direct connect numbers or identities assigned to

          the device, including usernames and passwords and electronic mail addresses;
- b. Call and direct connect history information, including Internet Protocol addresses accessed by the device or accessing the device;
- c. Stored photographs, videos and text messages;
- d. Stored electronic mail, including attachments, and voice messages and other recordings;
- e. Web-browsing history and any stored web pages;
- f. Stored documents and other files;
- g. Stored geo-location information; and,
- h. Data stored in any application.

These items may be or lead to: (1) evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 952, 960 and 963; (2) contraband, fruits of crime, or things otherwise criminally possessed; and (3) property designed or intended for use, or which is or has been used as a means of committing criminal offenses.

## **EXPERIENCE AND TRAINING**

4. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI) and have been so employed since June 2010. I have conducted criminal investigations of or relating to narcotics smuggling. I have received specific training in narcotics investigations and the methods used by narcotics traffickers to import and distribute drugs.

5. I am a graduate of the Criminal Investigator Course and Immigration and Customs Enforcement, Special Agent Training Program at the Federal Law Enforcement Training Center. I have received training in identifying various controlled substances and the conduct of controlled substances (Title 21) investigations. I have spoken with other agents with extensive experience in controlled substances investigations. I am assigned to conduct investigations of criminal violations relating to the smuggling and transportation of controlled substances. I have personally arrested or participated in the arrest of approximately 200 persons for violations of the Controlled Substances Act. In each of these cases, I have conducted interviews with the arrested persons and with their associates. Through these interviews, I have gained a working knowledge and insight into the typical working of controlled substance

traffickers and smugglers. I have also gained extensive information as to the normal operational habits of persons who traffic in controlled substances.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distribution amount quantities of hard narcotics, such as cocaine and methamphetamine. Typically, load drivers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular and digital telephones.

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe that law enforcement personnel may have difficulty tracking the originating and destination telephone numbers of calls placed to and from their cellular telephones.

    c. Drug smugglers will use cellular telephones because they are able to

actively monitor the progress of their illegal cargo while the conveyance is in transit.

  d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

  e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

  f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

## FACTS SUPPORTING PROBABLE CAUSE

  9. On April 29, 2013, at approximately 6:15 a.m., Martha Salas attempted to enter the United States through the San Ysidro, California, Port of Entry as the driver of a 2012 silver GMC Acadia bearing California license plates.

  10. Salas, who was accompanied by her three young children, gave the primary officer two negative customs declarations and said she was going to Chula Vista, CA. The officer received a computer generated referral and sent the vehicle for further inspection. The referral was based on information received the night before Salas' arrest from a source of information ("SOI") who stated that a GMC Acadia would be coming through the Sentri lanes with narcotics in the vehicle, and would be driven by Martha Fabiola Ramirez Mejia, which I have learned is Salas' maiden or family name. The SOI has given credible information to other agencies in the past which has led to previous narcotic seizures. Based on this assistance, including the SOI's assistance in this case, HSI is currently in the process of compensating the SOI with the ability to cross the border legally into the United States for at least one year.

  11. Upon referral to secondary, a Canine Enforcement Officer was requested to screen the Acadia. The canine gave a positive alert to the rear cargo floor area of the vehicle and the vehicle was sent through the vehicle x-ray machine. Once in the x-ray, the operator observed anomalies in the rear floor area. The seizing officer was notified of the canine alert and anomalies seen in the floor. The officer observed packages under the second back row of seats.

The officer probed a package and extracted a white substance that field tested positive for cocaine. The officer also probed another package and extracted a crystal substance that field tested positive for methamphetamine. Ten (10) total packages were removed from under the backseats of the vehicle. The cocaine weighed approximately 7.82 kilograms (17.20 pounds) and the methamphetamine weighed approximately 2.44 kilograms (5.37 pounds).

12. Incident to the arrest, Target Telephone #1 was seized by federal officers. It was located in a bag that supposedly belonged to Salas' 11 year old daughter.

13. Salas told agents that she had no cell phone with her and that Target Telephone #1 belonged to her 11 year old daughter.

14. During the course of the defendant's arrest, Target Telephone #1 received numerous incoming calls from a blocked number.

15. Based upon my experience and investigation in this case, I believe that Salas, as well as other persons as yet unknown, was involved in an on-going conspiracy to import cocaine and methamphetamine. Based on my experience investigating narcotics smugglers, I believe that Salas may have used Target Telephone #1 to coordinate with co-conspirators regarding the importation and delivery of the cocaine and methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of Salas and her co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and

extraction of data will complete the analysis within ninety (90) days, absent further application to this Court.

## CONCLUSION

20. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that defendant Salas used Target Telephone #1 to facilitate the offense of importing cocaine and methamphetamine. The telephone was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 952, 960, 963.

21. I also believe that probable cause exists that evidence, fruits and instrumentalities of illegal activity committed by Salas continue to reside on Target Telephone #1.

22. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized are likely to be found in the property to be searched described in Attachment B (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, and another federal law enforcement agents specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

ABBI HENRY
Special Agent, HSI

Subscribed and sworn to before me this 12th day of July, 2013.

Karen S. Crawford
United States Magistrate Judge

ATTACHMENT A

One Apple iphone 5 Cell Phone
Model# A1429
IMEI# 9900002732766215

Currently in the possession of HSI San Diego forensic analysts.

ATTACHMENT B

The following evidence to be searched for and seized pertains to violations of 21 USC 952, 960, 963:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

   a. tending to indicate efforts to deliver controlled substances from Mexico to the United States;

   b. tending to identify other facilities, storage devices, or services-such as email addresses, IP addresses, phone numbers-that may contain electronic evidence tending to indicate efforts to delivery controlled substances from Mexico to the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;

   d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points or tending to identify or exclude travel to or presence at locations described by Martha Salas in post-arrest statements;

   e. tending to identify the user of, or persons with control over or access to, the subject phone; or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

CELL PHONE SEARCH WARRANT METHODOLOGY PARAGRAPH AND ATTACHMENTS

Procedures For Electronically Stored Information

¶ It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

¶ Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

¶ Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.